Our fourth case for this morning is United States v. Sands. Mr. Crowe? Yes, good morning. May it please the court. I would like to use my time this morning to argue my primary issue, which is that the district court erred in determining that probable cause existed to detain Appellant Sands and to conduct an automobile search of his car, which search yielded the gun at issue. Regarding my second argument, that the district court erred in limiting defense counsel's closing argument at trial, I'd like to submit that on the briefs. Okay, fine. In addressing the lack of probable cause, I think it's useful to start at what exactly was the basis of the district court's determination that probable cause did exist to support the automobile search here, and also look at what information district court did not consider in reaching that determination. The district court's opinion on denying Appellant's motion to suppress begins with the discussion of the information provided by the informant. However, it's very clear that that information provided no role in district court's conclusion that probable cause existed to justify an automobile search of Appellant's car. The government effectively concedes this, stating at page 17 of its answering brief, the district court did not consider or need to consider the informant, because Officer Kilroy did not rely upon the informant's information. So therefore, we don't even have to consider the informant, because that was not any basis for district court's conclusion here. Now, it's my understanding that your primary theory of this case is that the seizure happens in the alley when the police car blocks the action, the further movement. Yes, I believe it's actually a street, but that is my theory, Your Honor. Okay, the one-way street. And so my question is why, at that point, there wasn't at least reasonable suspicion for an inquiry in a Terry way, and then once there's reasonable suspicion, you know, the gun is seen and everything else kind of unfolds from there. There are two responses to that. You know, first of all, as I was about to get into, the district court did not use the observations made by Officer Woolleyan regarding the alleged hand-in-hand sale of marijuana as any justification for its finding of probable cause. Now, the facts of this case, without dispute, indicate the police officers, who were like a block and a half, drove their car the wrong way, down a one-way street, at a high rate of speed, and parked their car two to three feet in front of Appellant's vehicle. So I'm willing to go with you that the vehicle is detained at that point, but that's why I went straight to Terry. It doesn't strike me as kind of as a friendly, hey what's up, sort of conversation by the police, but they have heard that there's a gold Camry, there's a license plate number, that drugs, I don't want to call it narcotics, I think it was marijuana, wasn't it, which is not a narcotic, were going to be dealt, that there was just something fishy going down, articulable suspicion, if you will, and that that allowed the officers to detain Mr. Sands, at least for a brief period. Well, my response is that they could have done a Terry stop, and then this whole case would have unfolded differently. They might have driven around the block and approached Mr. Sands' car from behind, then approached him and made inquiry. Why does that make any difference if they detained the car from the front? I mean, Terry stops sometimes involve even handcuffing. Well, the key distinction with a Terry stop of detention is the police actually intend to, and most often do, make some inquiry without conducting a full-blown detention. Here, there is no inquiry. It's very clear that Officer Williams directs the enforcement team, and that's how they refer to themselves, to take it down, which clearly means to make the arrest. So there was no intention. Williams thinks he's seen, I mean, there's there is something funny about this case, and I I'm not sure whether the district court ever reconciled Williams' account that he sees Hunter leaning in at the driver's side, and Kilroy's account that he sees Hunter over in the passenger seat and then fleeing briefly, and no one is saying that Hunter vaults over the car or dashes around it or climbs through the middle of the front seat or whatever. I mean, somehow gets from one side to the other. So if you think there was a drug deal, then it's pretty easy to see why there would be a Terry stop. Take it down, says Williams. Well, except a Terry stop would be for investigative purposes. The take it down indicates this was not for investigative purposes. That's the beginning of an investigation. It was to an effective arrest. That's clearly what it was. So this stop needs to be justified not by the reasonable suspicion standard of a Terry stop, but by the higher probable cause standard needed to justify a full-blown detention intended directly to lead to an arrest. I don't see why you can't do it one step at a time, though. I mean, they they've received some troublesome information about this car. They take a step to stop it, but then the probable cause builds pretty quickly. Well, my position simply is this never was a Terry stop and there was no intent to do an investigation. And the police are the ones who bypassed the Terry stop and went directly to the detention phase, which required termination of probable cause. And I agree with you. The district court never really does reconcile the discrepancies to Officer Williams' testimony and the officer's testimony in terms of exactly where Hunter was. But she doesn't really need to because she doesn't use Officer Williams' testimony in any way to support her finding a probable cause. And her opinion makes that abundantly clear in several places. Her opinion is in Exhibit 1 in my appendix. At page 1 of her opinion, the district court states that Sands was detained after a Chicago police officer observed a gun in his hands. She does not say that Sands was a police had a reasonable suspicion to believe he was dealing marijuana. Further on page 9, the district court states the relevant question is what Officer Kilroy, the arresting officer, believed when he observed when he detained defendant Sands and searched his vehicle. Again, she's not making any reference to or any reliance upon Officer Williams' observations. Third, on page 10, the district court states that probable cause to detain Sands existed because there was a reasonable probability that the officers would find evidence of a gun in Sands' possession. Again, no reference to any kind of a Terry stop based upon Williams' observations. And now the problem the district court runs into here... But then, I mean, like two sentences further down, Officer Kilroy heard from Officer Williams, who had been conducting surveillance, that defendant Sands had just engaged in a hand-to-hand narcotics transaction while sitting in his gold Camry. And then we see, you know, then we I'm not sure it's quite as cleanly separated as you're saying. Well, I think there are two reasons why, or at least two reasons, why district courts do not rely upon Williams' observations. First of all, they're very scant. He's parked 30 feet in front of Sands' vehicle, looking over his shoulder at Sands' vehicle for 15 minutes. Within that 15 minutes, he only sees one person approach Sands' vehicle and sees what he believes to be an exchange of some item he can't identify. Is there anything in the record to suggest that that person who approaches the vehicle, who Williams observes, might have simply been some third person unknown to us? Or are we all conceding that that's Hunter? Well, we're conceding that was Hunter. But at the time, Hunter was unknown to the police, and I think that what the court is alluding to is it could have... that person could have approached Sands for any reason. Now, that reason might have been clarified had Officer Williams remained on the scene and conducted further observations, and maybe seen within 20 minutes or so, three or four or five people approached the car in the exact same way. But part of the problem is Williams makes the call to take it down after seeing only one individual approach Sands' car and do what he thinks is an exchange of an item he can't see. So that's a part of the problem. A further part of the problem is what's not in the record that one typically sees in these testimony and evidence regarding the observing officers training and experience making observations in these small hand-to-hand sale cases. There's nothing in the record regarding Williams training and experience. What else one typically sees, but does not see here, is some testimony that the particular location where the arrest occurred was the location where the police had made a lot of drug arrests within a recent time. That's not here either, and again... Okay. I hope I've addressed your question. Yeah, thank you. That would be fine. So we'll give you a brief rebuttal. Okay. Mr. Jonas. Thank you, Your Honor. Certainly. May it please the court. My name is Barry Jonas. I represent the United States. I'm asking this court to affirm the defendant's conviction. So can you help me out with, you know, Mr. Hunter translocating from one side of the car to the other? I'm afraid I can't. That is a mystery. There is no explanation as to what happened here. I will state that Officer Williams testified that he stayed on scene watching what was happening until the officers, the other officers, approached. See, that's the problem. I mean, I'm having trouble completely extracting Officer Williams' observation of what he believes to be a drug transaction from the overall story of what unfolds. Because, you know, if that's all that it was, you know, and maybe Hunter or whoever it is, you know, stays on that side of the car and the police car comes up, it seems to me that's ample for reasonable suspicion, if not probable cause, you know, that police probably know the guard. If we decide that Williams doesn't, you know, was mistaken or something like that, that we're just not going to credit that, then what do we have? You know, why does the car, why does the police car come up the wrong way, the one-way street, and stop Mr. Sand's car from moving? Well, I don't, with all due respect, I don't think Officer Williams was mistaken. Again, I can't explain the discrepancy between his testimony of where the buyer was and where Hunter was. That's why I asked if anybody thought there was a third party. I mean, there are actually more than three people on the south side of Chicago, so, you know, I don't, but apparently that's not in the case, so I don't want to introduce it if it's not there. And, Your Honor, I've considered that myself. Was there a time period when Officer Williams left the scene and someone else could have shown up before the other officers arrived? But based on Officer Williams' testimony that he stayed there until the other officers arrived, there is no explanation. And frankly, there are no, that's why there are no drug charges in this case, because of this discrepancy. That's why there's just the gun charge. But Officer Williams did see a hand-to-hand, and a hand-to-hand drug transaction, and the district court gave Officer Williams credit for that. He found his testimony credible. That, he then calls the other officers and say, come to the scene. I'm paraphrasing, obviously. The other officers arrived, and assuming for sake of argument that the defendant was detained the minute the officers stopped their car, that was a reasonable detention. And our position is it was, at best, a terrorist stop, which the officers are allowed to do based upon the information they had in their hand. So are you relying on the informant, the color of the car, and all the rest of these things? No. I think that can be considered, yes. The district court did not consider it, because the district court did not need to consider the informant. There was sufficient probable cause, if not reasonable suspicion, based upon the information provided by Officer Williams, allowing the other officers to arrive on the scene and conduct that momentary stop. And once they stopped, and now we're talking one to two seconds from the time they stopped their car to the time Officer Kilroy's out of the car and sees the defendant with the gun. It's a reasonable suspicion that allows them to stop the car, at best, if not probable cause, based upon what Officer Williams told them. They stopped the car, he gets out within one second, sees the defendant with a gun, and therefore we have full-blown probable cause, allowing Officer Kilroy to arrest the defendant and go in the car and seize the gun. Does the record indicate that the arresting officers knew that Sands had a prior felony conviction? No. The record does not reflect that. So in today's world, where everybody actually seems to have a gun, why is having a gun something that's suspicious? It's not just having the gun. It's having the gun in the commission of an offense. What are they doing? They're in the car. Well, Officer Kilroy, what he was told was that the defendant had just committed a drug transaction, and that's why he's there. That's why you need that transaction in there. I don't see how you could do without it. Well, the transaction is in there. At the suppression hearing, we brought out all the I disagree with defense counsel. The District Court did rely upon what Officer Williams reported regarding the transaction as the first step in finding probable cause, as Your Honor pointed out in the District Court's opinion. I don't think the District Court was looking exclusively from the moment the time Officer Kilroy arrived on the scene. I think the court was looking at the information in Officer Kilroy's head, which was a crime was just committed, and sees a gun, and now we have probable cause allowing him to do what he did. If there are no further questions, then based upon the arguments in the government's brief and upon the arguments I made here today, I would request that the court affirm the conviction. Thank you. Thank you. I think all involve a true cherry-stop. In those cases have certain things in common. The defense vehicle, with one exception, was not in fact blocked. The police parked 15 or 20 feet away from the car, in most cases, and then went over to conduct, and did conduct, some sort of an inquiry. And after that inquiry, various things happened, different cases that elevated the level of suspicion from reasonable suspicion to probable cause to make an arrest. That's not what happened here. They blocked the car with no intention to make any inquiry. That's why Terry is not relevant. That's not what this was. That's counter to the facts of the case. This is a full-blown detention that required probable cause. The court did not consider the informant, did not consider Williams, relied entirely on Kilroy's observations, all of which took place after the detention, which lacked probable cause, and therefore should not have been considered, and the motion to suppress should have been granted. Thank you, Your Honor. All right, thank you very much. And particularly thank you, because you were appointed, were you not? Yes, Your Honor. And we appreciate the service to your client and to the court. It was my pleasure. Thank you.